CYNTHIA M. TOMES,

                       Plaintiff,

    -vs-                                  **Case No.  6:08-cv-390-Orl-GJK**

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Cynthia M. Tomes (the "Claimant") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income payments ("SSI").  *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **AFFIRMED**.

## I.      BACKGROUND

Claimant was born on June 29, 1965, and she has a high school education.  R. 70, 277. Claimant's past employment experience includes working as a waitress, caterer, preschool worker, and cafeteria worker.  R. 278, 281-82.  Claimant has not engaged in substantial gainful activity since February 28, 2003, but at the time of the hearing before the Administrative Law Judge, she had been employed part time for two weeks doing filing, mailing, and answering the telephone.  R. 105, 276-77, 280.  Claimant alleges an onset of disability as of February 28, 2003.

R. 70.[1]  On September 8, 2003, Claimant filed the present application for disability benefits and SSI alleging disability due to lupus, migraines, fatigue, and joint pain. R. 70, 95, 131.  Claimant remained insured through March 31, 2004.  R. 34.  Therefore, Claimant must establish a disability on or before March 31, 2004.

On March 8, 2004, Claimant's application was denied initially and, on June 21, 2004, the application was denied again upon reconsideration.  R. 43-54.  On July 8, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ") and, on January 19, 2006, a hearing was held before the Honorable Jon K. Johnson.  R. 37, 272-95.

At the hearing, Claimant was represented by Kathleen A. Smith, Esq.  R. 272.  A Vocational Expert, Lisa Goudy (the "VE"), was present at the hearing, but did not testify.  *See* R. 272-95.  Claimant was the only person to testify at the hearing.  *Id*.  Claimant testified to the following in pertinent part:

- She is unable to maintain full time employment due to her health issue, the symptoms of which include: extreme fatigue requiring an average of 12 to 16 hours of sleep per day; functioning with migraine headaches that are so debilitating she must lay in a dark room for several hours after taking migraine medication; and the medication makes her vomit.

- Dr. Salach diagnosed her with lupus;

- Lupus causes her constant fatigue to the point where she feels like she cannot go on. She's fallen asleep at traffic lights.  Her joints ache and swell severely, and mobility is difficult.  It is very difficult for her to feel things.  She drops a lot of things because she cannot feel them.  Her skin is very dry and she is allergic to the sun.  Sitting in the car line at school causes her skin to welt.  She is very frustrated and stressed due to lupus;

- She is able, within reason, to prepare her child for school each morning, but her daughter is often late for school;

- She is involved in school and church activities, but she no longer socializes and misses a

---

[1] The Administrative Law Judge found that Claimant had not engaged in any substantial gainful activity since the alleged onset date.  R. 34.

lot of her daughter's school functions;

- She is able to prepare microwaveable meals, but using a can opener brings her to tears. After three twists, pain shoots through her hands;

- She recently took a very flexible part time job because her family was struggling financially. She works approximately 11 to 20 hours per week. He employer allows her to come in for an hour or two and organize their filing. Sometimes she goes to work after dropping her daughter off at school and sometimes she goes home and takes a nap first. She drops things constantly, including the phone;

- Her symptoms became severe in October of 2002;

- It is very difficult for her to write and she does not type;

- She can use her hands for less than five minutes before the pain begins;

- She has swelling in the joints of her knees and the cartilage is gone. She cannot stand in line a lot and often uses handicap parking and wheelchairs;

- She can sit for no more than 15 to 20 minutes before having to stand or change positions;

- She can walk for "[m]aybe a block";

- She can stand for 20 minutes before having to sit;

- She cannot lift a gallon of milk because of the lack of sensation in her hands and lack of strength in her arms. She can lift a half gallon of milk with both arms;

- She has difficulty with driving and has to stop often because her hands become numb on the steering wheel. She has fallen asleep at the wheel and driven off the road recently;

- She gets debilitating migraine headaches every other week or so which persist for at least 24 hours;

- She does not read because it causes headaches, and she does not watch television because it hurts her eyes. She gets migraines if she reads or concentrates;

- She takes eight pain pills a day;

- Her medication regimen includes: Ultrium for the pain; Flexeril as a muscle relaxant; Tamalor of lupus; Imitrex for migraines; Plaquenil for lupus; and Synthroid for lupus. The side effects of the medication is that she has to sleep a lot and is very fatigued;

- She is able to take care of her personal hygienic needs with difficulty; and

- She sees her family doctor once every three months.

R. 272-95.

On April 28, 2006, the ALJ issued an unfavorable opinion finding Claimant not disabled.

R. 30-36.  In his decision, the ALJ made the following pertinent findings:

1. Claimant met the disability insured status requirements of the Social Security Act through March 31, 2004;

2. Claimant has not engaged in substantial gainful activity at any time relevant to this decision;

3. Claimant has the following severe impairments: systemic lupus erythematosus and migraine headaches;

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that Claimant has the residual functional capacity ("RFC") to perform medium work, in that she is able to lift/carry up to 50 pounds occasionally and 25 pounds frequently, stand/walk about 6 hours in an 8 hour workday and sit for about 6 hours in an 8 hour work day;

6. Claimant is able to perform her past relevant work as a waitress.  This work does not require the performance of work-related activities precluded by the claimant's [RFC]; and

7. Claimant has not been under a "disability," as defined in the Social Security Act, from February 28, 2003 through the date of this decision.

R. 32-36.  In reaching his decision, the ALJ made the following findings:

> Roderick H. Salach, D.O., a rheumatologist, evaluated the claimant on February 26, 2003 due to her having arthralgias and positive ANA.  He noted that the claimant had developed progressive, severe pain, stiffness primarily over the right elbow, right proximal arm and sometimes into the hand.  She did repetitive type work to the point where she has had difficulty lifting or carrying anything with her right arm.  She described some swelling over the PIP joints, wrists and elbow which seemed somewhat asymmetric in

4

the right side without much involvement in the left side of her body or lower extremities. Upon examination, he found some mild osteoarthritic changes in the PIP joints of right greater than the left hand. There was some tenderness over the lateral upper epicondyle. In an April 23, 2004 evaluation, based on the history obtained and the physical examination, Dr. Salach disgnosed [lupus], fibromyalgia and osteoarthritis generalized. This diagnosis was unchanged with the October 27, 2004 evaluation.

Donna Bacon, M.D., evaluated the claimant from 2003 to 2005. In a December 2, 2004 evaluation, Dr. Bacon noted the claimant's history of migraine headaches, which occur especially when she is stressed. Upon examination, she found her to be positive for fatigue (mild), arthralgias, joint stiffness and myalgias. Dr. Bacon diagnosed [lupus] and common migraine, not noted as intractable.

I find specifically that the claimant's [lupus] does not meet the requirements of section 14.02 as there is not the necessary involvement of joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological or mental; nor moderate severity of two or more organs/body systems with significant fatigue, fever, malaise and weight loss.

R. 34-35. After making the above residual functional capacity (the "RFC") determination, the

ALJ stated the following:

The claimant testified at the hearing that she has constant fatigue – falling asleep a lot during the day as well as joint pain in her arms and legs. She reported that her knees swell and ache. She complained of loss of appetite as she has dry mouth and mouth sores. She said that she has dry skin and skin welts. She contended that she gets easily frustrated and emotional. She stated that she get [sic] migraines every other week or so and they last for 24 hours at a time. She reported that she gets nauseous and vomits. She said that she takes medication for them and she sleeps in a dark room with cold compresses. The claimant testified that she tried to work in a pre-school, but she had to stop after three months as she was unable to do crafts, tie shoes for children and she drops objects. She stated that she gets dry skin and fatigue as a result of her medication. The claimant testified that she could only lift a gallon of milk with two hands, sit for 15 to 20 minutes, stand for twenty minutes and walk for one block. She stated that she has difficulty washing her hair and needs to use a shower chair. She

claimed that she engages in no social activities and is unable to watch television due to migraines.

After considering the evidence of record, <u>the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible.</u> The claimant is able to work 11 to 20 hours per week filing, mailing and answering the telephone for what she described as a very accommodating employer. While she claimed to be debilitated by her impairments, the claimant is able, in addition to working, actively participate in school and church activities. There were notations in the medical record in 2003 that the claimant had been "doing better," "does fairly well," and "doing well." The Disability Determination Service medical consultants found the claimant could do medium work. I find these assessments to be consistent with the evidence of record and worthy of substantial probative weight.

In comparing the claimant's [RFC] with the physical and mental demands of [her past relevant work], the undersigned finds that the claimant is able to perform it as actually and generally performed.

R. 35-36 (emphasis in original).

On June 13, 2006, the Claimant requested review of the ALJ's decision before the Appeals Council. R. 24. On January 22, 2008, the Appeals Council denied review, stating that it "found no reason . . . to review the [ALJ's] decision." R. 3-5. On March 14, 2008, Claimant timely filed an appeal in the district court. Doc. No. 1. On August 18, 2008, Claimant filed a memorandum in support of her position on appeal. Doc. No. 8. On October 10, 2008, the Commissioner filed a memorandum in support of the Commissioner's final determination. Doc. No. 9. The appeal is now ripe for review.

## II.    THE PARTIES' POSITIONS

Claimant assigns three related errors to the Commissioner's decision: (1) the ALJ erred by

failing to consider the effect of Claimant's lupus and migraine headaches on her ability to perform her past relevant work or any other work (citing *Vega v. Commissioner of Social Security*, 265 F.3d 1214, 1219 (11th Cir. 2001)); (2) the ALJ's RFC determination is not supported by substantial evidence; and (3) ALJ's credibility determination is not supported by substantial evidence. Doc. No. 8 at 1-18.

The Commissioner argues that substantial evidence supports his decision. He maintains that: (1) *Vega*, 265 F.3d at 1219, is not applicable to this case because here the ALJ found Claimant's lupus and migraine headaches were severe impairments, but their symptoms were simply not as disabling as Claimant alleged; (2) the ALJ's RFC determination is supported by substantial evidence because the state agency consultants' RFC findings do not conflict with the records of Claimant's treating physicians or the report from the state agency examining consultant; and (3) the ALJ's credibility determination is supported by substantial evidence (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Doc. No. 9 at 1-15.

## III.   MEDICAL HISTORY

The record on appeal contains the following pertinent medical history:

### A.   Treating Physicians

#### 1.   June 6, 2000 through October 11, 2005 – Dr. Bacon

Dr. Donna L. Bacon is Claimant's primary physician and, from June 6, 2000 through December 12, 2002, Claimant saw Dr. Bacon ten times. R. 162-71.[2] On June 6, 2000, Claimant presented to Dr. Bacon for the first time complaining of a double ear infection, swollen glands, difficulty swallowing, heavy chest, low grade fever, and sinus pressure which had persisted for thirty-two days. R. 171. On December 13, 2000, Claimant presented to Dr. Bacon complaining

---

[2] Dr. Bacon's handwritten notes are somewhat illegible. *Id.*

of migraines which were not relieved with six Excedrin per day, lightheadedness, heartburn, and frequent indigestion. R. 169. On June 25, 2002, Claimant presented complaining of stress, loss of appetite, and restlessness. R. 164. On November 27, 2002, Claimant presented complaining of throbbing pain in her fingers, wrists, elbows, and knees. R. 163. There are no other significant records from Dr. Bacon until January 23, 2004. R. 269.

On January 23, 2004, Claimant presented to Dr. Bacon complaining of headaches, seeking laboratory testing results, and prescription refills for Synthroid and Imitrex. R. 269. Dr. Bacon's notes show Claimant's pain improves with Imitrez and she has been compliant with treatment. R. 269. Physical examination was positive for migraine, but revealed no fatigue, fever, blurred vision, or eye pain. *Id*. Claimant was positive for arthralgias and joint stiffness. *Id*. Claimant was generally well developed, nourished, and in no apparent distress. R. 269. Claimant was diagnosed with acquired hypothyroidism. R. 269.

On October 4, 2004, Claimant presented complaining of continued migraines, a small contusion, and seeking prescription refills. R. 267. Dr. Bacon's notes reveal that Claimant was also being prescribed Ultram for her migraines and pain. R. 267. Physical examination showed no apparent distress. R. 267. On December 4, 2004, Claimant presented to Dr. Bacon with a diagnosis of systemic lupus erythematosus from Dr. Salach. R. 265. Claimant was seeking prescription refills for Pamelor, Plaquenil, and Ultram. R. 265. Claimant stated that she has to choose which doctor to see based on cost and "since she is stable [she] will not see the Rheumatologist this quarter" and "she would like another doctor anyway." R. 265. Physical examination revealed mild fatigue, no fever, and no unintentional weight gain or loss. R. 265. Claimant was negative for migraines, but positive for joint pain and stiffness. R. 265.

Generally, Claimant was in no apparent distress.  R. 265.  Claimant was last seen by Dr. Bacon on October 11, 2005, and still retained the diagnosis of lupus and migraine headaches, but Dr. Bacon's treatment notes are otherwise unremarkable.  R. 263.

    **2.**       <u>**February 26, 2003 through October 27, 2004 – Dr. Salach**</u>

Dr. Roderick H. Salach was Claimant's treating rheumatologist.  R. 200-08, 234-52.  On February 26, 2003, Claimant presented to Dr. Salach on referral from Dr. Bacon.  R. 207. Claimant stated that over the previous two years she developed "progressive, severe pain, stiffness primarily over the right elbow, right proximal arm and sometimes into the hand."  R. 207.  Claimant stated that she has trouble lifting and carrying anything with her right arm because of the pain.  R. 207.  Claimant stated that Ultram helps with the pain and if she takes Ibuprofen for prolonged periods she experiences gastrointestinal issues.  R. 207.  Lab results were inconsistent, but showed some signs of lupus.  R. 207. A review of Claimant's systems revealed no fever, weight loss, photosensitivity or other features of lupus.  Dr. Salach noted that Claimant had "some questionable radicular symptoms down the right arm."  R. 207. Neurological examination revealed 5/5 motor strength, intact reflexes, normal grip strength, and no muscle atrophy.  R. 208.  Musculoskeletal examination revealed some mild osteoarthritic changes ("OA") in the joints of her right hand, but no synovitis, dactylitis or joint effusions.  R. 208.  Claimant's spinal range of motion was normal.  R. 208.  Dr. Salach's impressions were as follows:

> Her exam history is more consistent with lateral upper epicondylitis or overuse syndrome in the upper extremities; she may have a component of carpal tunnel syndrome on the right. She does have what seems to be some premature early OA in the PIP joints as opposed to synovitis or findings suggestive of lupus. Also, because of the radiation of pain from the shoulder all the way

down into the hand would consider cervical radiculopathy.

> Positive ANA of uncertain significance. The sensitivity, specifically of anti-chromatin antibodies and diagnosing [lupus] is not confirmed. May have some more specificity related to diagnosing drug induced lupus. Her DNA antibodies are in any event negative.

R. 208. Dr. Salach's recommendations were further laboratory studies and x-rays. R. 208.

On March 21, 2003, Dr. Salach's notes show that Claimant's elbow pain had improved.

R. 206. On June 20, 2003, Dr. Salach's notes state the following:

> [Claimant] does fairly well if she gets the Ultram twice a day along with the Voltaren it seems to help a lot with her various pains, fatigue, etc. Again, multiple somatic complaints, the permanent one is fatigue she needs 12 hours of sleep to feel rested, also hives, some photosensitivity has been reading about lupus concerned about this. . . . May have early undifferentiated connective tissue disease given the positive ANA in the past, low complements, positive anti chromatin antibodies, however, can't really make confirmative diagnosis of lupus, will repeat some of her serology. . . .

R. 205. On September 3, 2003, Claimant presented to Dr. Salach complaining of fatigue, arthralgias, some dry skin, and dermantitis over her fingertips. R. 204. Dr. Salach states that he suspects "she does indeed have [lupus]." Dr. Salach prescribed Plaquenil, low dose Prednisone, and scheduled follow up examinations for lupus. R. 204.

On October 17, 2003, Dr. Salach's notes reveal:

> [Claimant] doing well her major complaint is headaches, she describes them as right temporal, frontal they have started after some head trauma years ago. They seem to be getting more intense, more frequent, she has a couple of episodes a month, gets nauseated, has to sit in a quiet room, dark room. She gets benefit from Imitrex. . . . [S]uspect her headaches are more migraine related. . . . We will repeat some of her serologic labs looking into lupus activity. She can continue Plaquenil and would avoid any other short acting analgesics.

R. 203. Claimant was not seen again by Dr. Salach until January 23, 2004. R. 202. At that time, Dr. Salach's treatment notes reveal the following:

> Doing well, Pamelor definitely helps her headaches, some nights she does get some increase in pain, stiffness that the Ultracet doesn't help with. For the most part it does help her pain during the day. . . . [Lupus], fibromyalgia, migraine headaches doing well. She will continue her same medications, reviewed her labs everything is normal, DNA is negative, complement is normal. . . . As far as pain at night she can take Darvocet sparingly, discussed issues as far as increasing pain medications.

R. 202. Dr. Salach began scheduling follow up appointments every four months. R. 201.

On April 23, 2004, Claimant presented to Dr. Salach stating that she was doing well. R. 200. Dr. Salach's notes reveal that Claimant's lupus was currently in remission, Ultram works better than Darvocet on the pain, and Pamelor helps the migraines. R. 200. Claimant was still suffering from fatigue and loss of appetite, but no other symptoms. R. 200. Physical examination revealed a normal range of motion in her neck, no thyroid enlargement, OA was present, but no synovitis, and normal, non-painful range of motion. R. 200. Dr. Salach recommended continuing the medication regimen, but also counseling regarding the risks and benefits of Ultram. R. 200.

On June 9, 2004, Claimant presented to Dr. Salach experiencing severe nausea, vomiting, and difficulty "getting around." R. 251. Claimant was suffering from a fever, weakness, abdominal pain, diffuse aches and pains, and fatigue. R. 251. Upon physical examination, Claimant appeared ill, anxious, and toxic. R. 251. Claimant's neck had a normal range of motion, normal thyroid, and cervical lymph nodes. R. 251. No synovitis discovered in the Claimant's upper and lower extremity joints. R. 251. Claimant was diagnosed with infectious

gastroenteritis and Dr. Salach recommended that Claimant present to the emergency room, but doubted her symptoms were caused by lupus. R. 251. On July 14, 2004, Claimant presented for a follow up with Dr. Salach and reported that she was doing fairly well following her hospitalization for gastrointestinal problems. R. 249. "[Claimant] feels that her lupus is under control at this point." R. 249. Claimant had no major complaints, and physical examination was unremarkable. R. 249.

On August 23, 2004, Claimant presented stating that "she is fairly well." R. 244. Claimant was still suffering from wrist and knee pain, but stated the discomfort was "mild." R. 244. Claimant stated she was still suffering from fatigue and daily nausea. R. 244. Claimant acknowledged that she was taking 8 to 10 Ultram a day for pain. R. 244. Physical exam was largely unremarkable with normal, non-painful range of motion in upper and lower extremity joints, but some tenderness was present. R. 244-45. Dr. Salach recommended reducing Claimant's Ultram intake to no more than 4 to 6 pills per days and discussed the risks and benefits of pain medication. R. 245. Dr. Salach also recommended Claimant continue walking, start exercising or perform water aerobics. R. 245. Dr. Salach also discussed the effect stress and depression plays on Claimant's symptoms. R. 242.

On September 22, 2004, Claimant reported to Dr. Salach that "she is doing fairly well." R. 239. However, Claimant continued to complain of bilateral knee, elbow, and wrist pain. R. 239. Claimant stated the pain is severe and Ultram minimally helps the pain. R. 239. Dr. Salach's notes reveal that Claimant was "in tears" due to the severity of the pain. R. 239. A review of her systems showed she was still suffering from fatigue due to the pain and nausea. R.

239. Dr. Salach's notes show that Claimant was suffering from depression and anxiety. R. 239.[3] Physical examination show normal range of motion, mild OA changes, and no synovitis. R. 239-40. Dr. Salach recommend that Claimant continue with treatment, but discussed the risk and benefits of pain medication. R. 240.

On October 27, 2004, Claimant presented to Dr. Salach for the final time. R. 234-35. Claimant reported that "she is doing fairly well." R. 234. Claimant complained of "mild achiness" in her knees and wrists. R. 234. Dr. Salach's notes state the following regarding Claimant's use of Ultram:

> Had several RXs for Ultram filled (since 9/12 she has had 340 Ultram tabs filled). States we didn't give her a RX from last visit 9/22 and she had to call Dr. Bacon to get RX since she couldn't contract or (sic) office. Spoke to Pharmacy and she has been filling a portion of her prescriptions filled [sic] which has added to the confusion.

R. 234. A review of Claimant's system revealed no fever, weight loss, and no fatigue, but night sweats and frequent nausea were present. R. 234. Dr. Salach's notes show no symptoms of lupus, but fibromyalgia was present with no night pain. R. 234. Physical examination was unremarkable. R. 234. Dr. Salach's assessment showed Claimant was reacting well to low doses of prednisone, but she was still taking "a lot of Ultram, up to 8 a day." R. 234. Dr. Salach's notes also reveal that he discussed opioid risks, dependence, abuse, withdrawal, and tolerance regarding Ultram. R. 235. Claimant refused to sign a pain management agreement, did not take a prescription for Ultram, and did not make a follow up appointment. R. 235. Dr. Salach offered to refer Claimant to a psychiatrist, but she declined. R. 235.[4]

---

[3] Claimant has not raised any argument that the ALJ failed to properly evaluate her depression.
[4] Neither Dr. Bacon nor Dr. Salach offered a medical source statement or otherwise offered an opinion regarding Claimant's condition or RFC.

**B.**     <u>**Disability Related Opinions**</u>

**1.**     <u>**February 17, 2004 – Dr. Mignogna – Consultative Examination**</u>

On February 17, 2004, Claimant presented to Dr. Joseph J. Mignogna for a consultative physical examination. R. 185-90. Dr. Mignogna had the benefit of reviewing Dr. Salach's office notes and serology testing results, including Claimant's positive lupus test. R. 185. Dr. Mignogna's consultative examination focused on Claimant's lupus. R. 185. Dr. Mignogna reported the following about the history of Claimant's illness:

> Claimant states [lupus] was diagnosed one year ago. She saw her family doctor for joint pains and was sent to a rheumatologist, had lab work, was diagnosed with possible rheumatoid arthritis, but then diagnosed as lupus. She was placed on prednisone, Plaquenil, vitamins, etc. Her doctor discussed a CT scan or MRI of the brain for headaches to rule out possible swelling of the brain. She was placed on Pamelor and Imitrex for the headaches, and Imitrex helps. She complains of swollen knuckles, headaches, fatigue, joint pain (elbows, knees, shoulders), difficulty with range of motion, difficulty with movement for any length of time, and nausea. She states the headaches occur about twice monthly, needs to go to bed, accompanied by photosensitivity, dry eyes (claimant relates this to her Plaquenil and uses artificial tears), dizziness and vertigo and temporal swelling. She states she cannot ride in a car, but must drive because of the vertigo. She has an eye exam due February 18, 2004. She states she takes Imitrex twice and usually gets relief. She had been employed as a waitress and school teacher until one year ago.

R. 186. Dr. Mignogna's report shows that Claimant's condition has a mild effect on her activities of daily living because Claimant is able to: dress herself; take care of her own personal hygiene; do household cleaning; grocery shop with help; manage her own funds; do laundry with help; eat; cook; drive; watch television; use a computer; and read. R. 186. Physical examination was unremarkable. R. 187. Claimant's fine manipulation was normal "as evidenced by the

[C]laimant's penmanship and ability to perform rapid alternating movements with the fingers and handle personal items." R. 187. On a scale of 0 to 5, Claimant's motor strength was 5 in all areas, including her grip strength. R. 188. Claimant's hands had "[p]rominent PIP without tenderness, gross deformity or inflammatory changes." R. 188. Claimant's mental status examination revealed appropriate affect and judgment as well as grossly normal cognitive function. R. 188.

Dr. Mignogna's diagnosis and functional assessment stated:

> Lupus: There was no evidence on exam of active disease or adverse effects from chronic steroid therapy. The claimant's medical records did document the diagnosis of lupus, however.

R. 189. Dr. Mignogna opined that Claimant would have no restrictions in the following areas: standing; walking; sitting; lifting; carrying; posture; and manipulations. R. 189.

### 2. March 4, 2004 – RFC Assessment – Dr. Morford

On March 4, 2004, a non-examining state agency consultant, Dr. Donald W. Morford, completed a Physical Residual Functional Capacity Assessment ("RFC") of Claimant. R. 191-99. Dr. Morford reviewed Dr. Mignogna's report prior to completing the RFC. R. 192. Dr. Morford made a primary diagnosis of lupus and a secondary diagnosis of migraine headaches. R. 191. Dr. Morford opined that Claimant's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum of fifty pounds; (2) frequently lifting and/or carrying a maximum of twenty-five pounds; (3) standing and/or walking about six hours in an eight hour workday; (4) sitting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling. R. 192. Dr. Morford stated he based his opinion on Dr. Mignogna's report. *See* R. 192-93. Dr. Morford opined that

Claimant had occasional postural limitations when climbing ramps, stairs, or a ladder, but no other postural limitations.  R. 193.   Dr. Morford opined that Claimant had no manipulative, visual, or communicative limitations, but Claimant should avoid concentrated exposure to extreme heat and cold, as well as hazards.  R. 193-95. Regarding the severity of Claimant's symptoms, Dr. Morford stated that Claimant's symptoms "may slightly exceed objective findings" in the medical record and Dr. Mignogna's report supports few functional limitations. R. 196.

### 3.    June 15, 2004 – RFC Assessment – Dr. Eric C. Puestow

On June 15, 2004, a non-examining state agency consultant, Dr. Eric C. Puestow, completed a Physical Residual Functional Capacity Assessment ("RFC") of Claimant.  R. 225-233.  Dr. Puestow states that he reviewed Claimant's treatment records.  R. 231.  Dr. Morford made a primary diagnosis of lupus and a secondary diagnosis of fibromyalgia and headaches.  R. 225.  Dr. Puestow opined that Claimant's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum of fifty pounds; (2) frequently lifting and/or carrying a maximum of twenty-five pounds; (3) standing and/or walking about six hours in an eight hour workday; (4) sitting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling.  R. 226.  Dr. Puestow stated he based his opinion on rheumatology notes regarding lupus and fibromyalgia plus migraines.  R. 226.  Dr. Puestow stated that physical examination showed mild OA changes in the hands, multiple tender point, full range of motion, and no synovitis.  R. 226.  Dr. Puestow stated there were no objective exam abnormalities and no work restrictions.  R. 226.  Dr. Puestow opined that Claimant had no postural, manipulative, visual, communicative, or

environmental limitations, except that Claimant could not work with exposure to the sun.  R. 227-29.  Regarding the severity of Claimant's symptoms, Dr. Puestow stated that there were "[m]inimal objective findings."  R. 230.

## IV.  **LEGAL STANDARDS**

### A.  **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities.  20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR §§

404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as

it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

B.     THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

## V.    ANALYSIS OF ALLEGED ERRORS

### A.    Whether ALJ Failed to Consider the Effect of Lupus and Migraines

As set forth above, Claimant argues that the ALJ erred by failing to consider the effect of Claimant's lupus and migraine headaches on her ability to work. Doc. No. 8 at 1, 11 (citing *Vega*, 265 F.3d at 1219). The Commissioner argues that *Vega* is not applicable to the facts of this case. Doc. No. 9 at 12. In *Vega*, 265 F.3d at 1219, the ALJ failed to make <u>any finding</u> that the claimant suffered chronic fatigue syndrome ("CFS") and failed to credit her subjective complaints of fatigue to CFS. *Id.* The Eleventh Circuit stated that the medical record clearly

revealed a diagnosis of CFS and "the ALJ should have acknowledged it in his evaluation and discussed why he disregarded it." *Id.* The Eleventh Circuit held that in assessing Vega's RFC, the ALJ did not properly consider the diagnosis of CFS and a remand is warranted when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Id.*

In the present case, the ALJ specifically found that Claimant suffered from severe impairments of lupus and migraine headaches. R. 34. In making this finding, the ALJ reviewed, albeit briefly, the medical records from Drs. Bacon and Salach. R. 34. The ALJ went on to find that the impairments, while severe, did not meet listing level severity, and made an RFC determination. R. 35. The ALJ clearly considered Claimant's impairments and their combined effect on her functional ability to work. Thus, unlike *Vega*, the ALJ here specifically considered the diagnoses of lupus and migraine headaches and evaluated their symptoms in reaching his RFC determination. Accordingly, the ALJ properly evaluated Claimant's condition under *Vega*.

**B. Whether the ALJ's RFC is Supported By Substantial Evidence.**

Claimant argues that the ALJ's RFC determination is not supported by substantial evidence and is, in fact, contrary to the substantial evidence of record. Doc. No. 8 at 12. As set forth above, substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Before considering step four of the sequential evaluation process as set forth above, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An

individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* If a claimant can still do the kind of work she has done in the past, then the Regulations require that she be found not disabled. At this stage of the evaluation process, the burden is on claimants to show that they can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986). The responsibility for determining a complainant's RFC rests solely with the ALJ. 20 C.F.R. §§404.1513(b)(6) (". . . the lack of the medical source statement will not make the report incomplete"); 20 C.F.R. §§404.1527(e)(2), 416.927(e).[5] In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

The Court has reviewed the entire medical record and concludes that substantial evidence supports the ALJ's decision. Dr. Bacon's treatment notes are largely unremarkable. R. 162-71, 263-69. Dr. Salach's treatment notes clearly reflect a diagnosis of lupus, fibromyalgia, and migraine headaches, but also show that Claimant was stable and the medication was having its desired effect. R. 200-08, 234-52. No treating physician offered a medical source statement or otherwise opined about Claimant's ability to function despite her impairments. Dr. Mignogna's

---

[5] "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your [RFC] . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2).

consultative examination supports the diagnoses of lupus and migraine headaches, but also reflects that there is no evidence of active lupus. R. 185-90. Dr. Mignogna's report is consistent with the medical records of Drs. Bacon and Salach.

Non-examining state agency consultants' opinions are entitled to little or no weight when compared or contradicted by the opinions of treating or examining physicians. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). While the opinions of a non-examining physician do not constitute substantial evidence when standing alone, the opinions of Drs. Morford and Puestow are supported by the examining physician's opinion and are not contradicted by the medical record. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

## C.    Whether the Properly Applied the Pain Standard.

Claimant argues that the ALJ's credibility determination is not supported by substantial evidence and the ALJ should have found Claimant's subjective complaints credible. Doc. No. 13-18. In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.

1986)).[6]  "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[7]  Thus once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  *Foote*, 67 F.3d at 1561.  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so," or the record must be obvious as to the credibility finding.  *Id.* at

---

[6] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." Social Security Ruling 88-13.

[7] Social Security Ruling 96-7p provides:

> 2. <u>When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established</u>, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
>
> 3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
>
> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

*Id.* (emphasis added).

1561-62.   A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562 (citing *MacGregor v. Bowen*, 782 F.2d 1050, 1054 (11th Cir. 1986)); *see also Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Id.*   The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case.   *Id.*   If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (*quoting Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)).   Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding.   *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.

   In the present case, after detailing Claimant's testimony, the ALJ made an explicit credibility determination that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [C]laimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible."   R. 34-35.   The ALJ then discussed Claimant's present part time job, participation in school and church activities, and that the medical record indicates that she was doing better.   R. 34-35.   While Claimant points to the ALJ's finding that Claimant actively participates in school and church activities and states that it is a mischaracterization of her testimony (*see* Doc. No. 8 at 14-15), the

record does not support Claimant's allegations regarding the disabling effect of her condition. For example, Claimant testified that she can only use her hands for five minutes; she can stand for only twenty minutes; she can sit for only fifteen to twenty minutes; she can only one block; and she cannot lift a gallon of milk. *See* R. 272-295. The evidence, medical or otherwise, does not support the severity of Claimant's allegations. Thus, the Court finds that the ALJ offered specific and adequate reasons for finding Claimant's subjective complaints not entirely credible and that finding is supported by substantial evidence.

## VI.    CONCLUSION

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter a separate judgment in favor of the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on June 17, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Kathleen A. Smith, Esq.
Riley & Smith, P.A.
P.O. Box 2646
Titusville, Florida        32781

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920


The Honorable Jon K. Johnson
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Charleston Federal Center
500 Quarrier Street, Suite 100
Charleston, WV 25301